No. 25-1373

United States Court of Appeals
For the First Circuit

**John Doe**
Plaintiff-Appellant

v.

**Sara Smith**
Defendant-Appellee

**Maine Trust for Local News Trust, L3C**
Intervenor-Appellee

On Interlocutory Appeal from the District of Maine

**Defendant-Appellee's Brief**

Peter J. Brann, Bar #45139
Hanna L. Wurgaft, Bar #1212807
Brann & Isaacson
113 Lisbon St., P.O. Box 3070
Lewiston, ME 04243-3070
207.786.3566
pbrann@brannlaw.com

*Attorneys for Defendant-Appellee*

# Table of Contents

Table of Contents ..............................................................................i

Table of Authorities .......................................................................iii

Statement Opposing Oral Argument...............................................1

Statement of Jurisdiction..................................................................1

Statement of Issues...........................................................................2

Statement of the Case ......................................................................3

Summary of Argument .....................................................................8

Argument ........................................................................................10

    I.     The Parties Agree that the Trial Court's Rulings
          Should be Evaluated Under the Abuse of
          Discretion Standard.........................................................10

    II.    The Trial Court Did Not Abuse its Discretion in
          Denying Plaintiff's Unprecedented Request to
          Close the Entire Trial Concerning an Alleged
          Breach of a Nondisclosure Agreement .........................11

          A.    The Denial of the Motion to Close the Trial is
                  Supported by the Common Law Right of
                  Public Access.........................................................12

          B.    The Denial of the Motion to Close the Trial
                  Is Supported by the First Amendment ...............21

III.    The Trial Court Did Not Abuse its Discretion in
        In Denying Plaintiff's Unprecedented Request to
        Allow the Adult Parties and All Witnesses to
        Use Pseudonyms at Trial.................................................................28

Conclusion.................................................................................................37

Certification of Compliance....................................................................38

Certificate of Service ..............................................................................39

# Table of Authorities

**Cases**

*Adkins v. Children's Hosp. of the District of Columbia,*
    261 U.S. 525 (1923) ........................................................................14

*Bricklayers and Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC,*
    752 F.3d 82 (1st Cir. 2014) ...........................................................11

*Brown & Williamson Tobacco Corp. v. FTC,* 710 F.2d 1165 (6th Cir. 1983),
    *cert. denied,* 465 U.S. 1100 (1984) ...............................................24

*Detroit Free Press v. Ashcroft,* 303 F.3d 681 (6th Cir. 2002)..............................25

*Doe v. Del Toro,* 2024 WL 816511 (D. Mass. Feb. 27, 2024)...............................33

*Doe v. Lisbon,* 78 F.4th 38 (1st Cir. 2023) ..............................................31

*Doe v. MIT,* 46 F.4th 61 (1st Cir. 2022) ......................................................*Passim*

*Doe v. Santa Fe Indep. School Dist.,* 933 F. Supp. 647 (S.D. Tex. 1996) .......24, 25

*Does 1-3 v. Mills,* 39 F.4th 20 (1st Cir. 2022) ..................................................11, 30

*Fashion House, Inc. v. Kmart Corp.,* 892 F.2d 1076 (1st Cir. 1989).....................11

*Foss v. Eastern States Exposition,* 2025 WL 2417033 (1st Cir. Aug. 21, 2025)..32

*Gannett Co. v. DePasquale,* 443 U.S. 368 (1979)............................................22, 23

*Globe Newspaper Co. v. Superior Court for the County of Norfolk,*
    457 U.S. 596, (1982) ......................................................................26

*In re Continental Ill. Secs. Litigation*, 732 F.2d 1302 (7th Cir. 1984) .................25

*In re Redondo Constr. Corp.*, 678 F.3d 115 (1st Cir. 2012)...................................33

*In re T.R.*, 556 N.E.2d 439 (Ohio 1990) .................................................................17

*Jones Lang LaSalle Americas, Inc. v. NLRB*, 128 F.4th 1288 (D.C. Cir. 2025)....22

*Lawes v. CSA Architects and Engineers LLP*, 963 F.3d 72 (1st Cir. 2020).........11

*Lawless v. Stewart Health Care Sys., LLC*, 894 F.3d 9 (1st Cir. 2018) ...............22

*Lawson v. Rubin*, 2019 WL 5291205 (E.D.N.Y. Oct. 18, 2019)...........................32

*Lochner v. New York*, 198 U.S. 45 (1905) .............................................................14

*Martis v. Dish Network*, 2013 WL 6002208 (W.D. Mich. Nov. 12, 2013) .........15

*Nat'l Org. for Women v. McKee*, 2010 WL 3364448
(D. Me. Aug. 24, 2010) (Rec. Dec.) ...........................................................26

*Newman v. Graddick*, 696 F.2d 796 (11th Cir. 1983) ..........................................25

*Ospina v. Trans World Airlines, Inc.*, 975 F.2d 35 (2d Cir. 1992) .......................16

*Press-Enterprise Co. v. Superior Court of California, Riverside Cty.*,
464 U.S. 501 (1984) ..............................................................................23, 27

*Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059 (3d Cir. 1984).....16, 24, 26, 27, 28

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980).................. 23, 24, 25

*Standard & Poor's Corp. v. Commodities Exch., Inc.*, 541 F. Supp. 1273
(S.D.N.Y. 1982) ............................................................................................16

*Town of Norwood v. FERC*, 202 F.3d 392 (1st Cir. 2000) ...................................22

*United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013)............. 9, 12, 13, 15, 17, 18

*United States v. Three Juveniles*, 61 F.3d 86 (1st Cir.1995), *cert. denied*,
    517 U.S. 1166 (1996) ...................................................................24

*West Coast Hotel Co. v. Parrish*, 300 U.S. 379 (1937)...........................................14

*Webster Groves Sch. Dist. v. Pulitzer Publishing Co.*,
    898 F.2d 1371 (8th Cir. 1990).......................................................25

*Westmoreland v. Columbia Broadcasting System, Inc.*,
    752 F.2d 16 (2d Cir. 1984), *cert. denied*, 472 U.S. 1017 (1985) ...........24, 25

**Statutes**

28 U.S.C. § 453................................................................................................21

28 U.S.C. § 1332 ...............................................................................................1

**Rules**

Fed. R. App. P. 34(a)(2).....................................................................................1

Fed. R. Civ. P. 1................................................................................................13

Fed. R. Civ. P. 43(a) .........................................................................................12

Fed. R. Civ. P. 77(b)..........................................................................................12

## Constitutional Provisions

U.S. Const. amend. VI .............................................................................22

## Statement Opposing Oral Argument

Defendant-Appellee Sara Smith believes that oral argument is unnecessary in this appeal. *See* Fed. R. App. P. 34(a)(2); *see also* Addendum to Appellant's Brief (Add.) 40 (district court declining to hold oral argument on underlying motion because "[t]he resolution of the legal issues in this case seems quite clear to the Court"). In determining whether oral argument is appropriate, the Court should also consider that this is a war of attrition between a billionaire lottery winner and an emergency room nurse in which this is the third interlocutory appeal filed by Plaintiff-Appellant John Doe and there are over 200 docket entries in the district court despite no dispositive motions having been filed, almost no discovery having been conducted, and no trial looming on the horizon.

## Statement of Jurisdiction

Plaintiff contends that the district court had diversity jurisdiction under 28 U.S.C. § 1332 because the parties are diverse and Plaintiff is seeking at least $100,000 in damages from Defendant for alleged breach of a

nondisclosure agreement (NDA). *See* Appendix (App.) 52, 57 (Complaint (Compl.) ¶¶ 3, C).

Under *Doe v. MIT*, 46 F.4th 61, 65–66 (1st Cir. 2022), orders denying motions to proceed by pseudonym are immediately appealable under the collateral order doctrine. Under the same analysis, we assume that orders denying a motion to close a trial would likewise be immediately appealable. Because Plaintiff filed this interlocutory appeal on April 14, 2025, from the district court's order issued on April 10, 2025, the appeal is timely. App. 122; Add. 41.

## Statement of Issues

1.      Did the trial court abuse its discretion in denying Plaintiff's unprecedented request to close the entire trial in a case involving an alleged breach of a nondisclosure agreement?

2.      Did the trial court abuse its discretion in denying Plaintiff's unprecedented request to allow the adult parties and all witnesses to use pseudonyms at trial?

**Statement of the Case**

Other than the crabbed description of the district court's order challenged on appeal, Defendant does not object to Plaintiff's detailed recitation in his Statement of the Case of the procedural history of the issues raised in this interlocutory appeal. *See* Appellant's Brief 3–14. But that is only part of the story—the background facts are also necessary to put this appeal into context.

Underscoring the conclusion that Plaintiff's goal of anonymity can only be satisfied if this case is tried entirely in secret, the evidence all comes from the parties, their relatives, partners, friends, and business associates who, in turn, would be testifying about Plaintiff and Defendant. Accordingly, the relevant background facts were described in broad-brush terms in a declaration submitted on this motion, rather than including the disclosures and discovery that would identify all of these people, and thus short-circuit this litigation. *See* App. 119–21 (Brann Dec.).

In the original, operative, complaint, Plaintiff alleges that he and Defendant had a daughter together before he won the lottery, and that he

had Defendant enter into an NDA to keep the public and media from learning about Plaintiff's $1.3 billion lottery win. *See* App. 53 (Compl. ¶¶ 5–7); *cf.* App. 106–18 (order denying Plaintiff's motion to filed amended complaint). Beyond the scope of this appeal, we note that Defendant repeatedly alleged below that Plaintiff is trying to use this litigation to gain leverage in the on-going family law dispute concerning their daughter, which Plaintiff naturally denies. The NDA drafted by Plaintiff's counsel did not contain the usual confidential arbitration provision, but instead authorized Plaintiff to file a lawsuit in the event of an alleged breach. *See* Add. 45 (NDA ¶ 5).

Plaintiff's complaint alleges that Defendant breached the NDA in only one respect: "Upon information and belief, Defendant has disclosed Protected Subject Matter in one or more telephone communications with John Doe's father and stepmother." App. 55 (Compl. ¶ 17); *cf.* Add. 42 (NDA ¶ 1(b) (defining Protected Subject Matter)). Plaintiff also alleges that "[u]pon information and belief, and as a result of Defendant's unauthorized disclosure of Protected Subject Matter to John Doe's father and stepmother,

other third parties are now in possession of John Doe's Protected Subject Matter, including his sister." App. 55 (Compl. ¶ 18). Everyone now apparently agrees that these allegations are untrue.

Defendant denied these allegations under oath. *See* ECF 32-1 (Defendant Dec. ¶¶ 18–19). Additionally, Plaintiff's own father denied Plaintiff's allegations under oath, and instead swore that *Plaintiff* told him about winning the lottery and that he then told Plaintiff's sister about Plaintiff's good fortune. *See* ECF 78 (Dad Dec. ¶¶ 4–7).

The *pièce de résistance* is that *Plaintiff* also contradicted under oath the only allegation against Defendant in the complaint when he submitted a sworn declaration stating: "I made the mistake of telling my father that I had won the lottery without having him sign a confidentiality agreement." App. 92 (Plaintiff Dec. ¶ 19). Similarly, in a sworn response to Defendant's First Set of Interrogatories that asked Plaintiff to "[i]dentify each individual and entity who Plaintiff told about his lottery winnings, his finances, the Protected Subject Matter (as defined in Defendant's nondisclosure agreement ((NDA)), or any other matter deemed confidential by the

Plaintiff," Plaintiff identified his father. App. 119 (Brann Dec. ¶ 4). Having effectively conceded twice under oath that the central allegations in this litigation are groundless, Plaintiff's continued litigation cannot be explained by the merits of his claim.

Virtually no discovery has been conducted in this case. In response to targeted written discovery, Plaintiff produced one document that Defendant had not previously seen, in addition to three documents Defendant already had in her possession. *See* ECF 177 (Discovery Order 4). Following a comprehensive order by the trial court requiring Plaintiff to produce additional documents and supplement his interrogatory responses, ECF 177, Plaintiff filed an interlocutory appeal (No. 25-1196), which Defendant moved to dismiss on March 14, 2025.

Although we cannot rely on discovery or pre-trial memoranda to predict the nature of a trial in this case, the parties' initial disclosures make plain that a trial will consist entirely or largely of evidence from the parties, their relatives, partners, friends, and business associates. This, in turn, makes it readily apparent that the trial court could not conduct jury selection, much

less try this case, without revealing the key thing Plaintiff wants to keep secret, namely, his identity.

According to Plaintiff's initial disclosures, all of the relevant evidence in this case comes from Plaintiff, Defendant, and their 16 relatives and partners. App. 120 (Brann Dec. ¶¶ 5, 7). Similarly, according to Plaintiff's initial disclosures, the critical written evidence in this case comes from Plaintiff, Defendant, and five of their relatives and partners. *Id.* ¶ 6.

Defendant likewise points to similar sources of evidence. In her initial disclosures, Defendant states that relevant evidence will come from Defendant, her partner, Plaintiff's friends, Plaintiff's girlfriend, Plaintiff's business advisor, and her son's fiancé. App. 121 (Brann Dec. ¶ 9). Once Plaintiff's interlocutory appeal of the trial court's discovery order is dismissed, Defendant expects to add to this list, assuming Plaintiff identifies anyone else who signed an NDA, anyone else Plaintiff told about his lottery winnings, or anyone else who may be involved in the alleged "security" being provided to Defendant and her daughter, which is the purported consideration for the NDA. App. 120–21 (Brann Dec. ¶¶ 8, 10).

In other words, the parties both agree that the testimony and evidence in this case will come from Plaintiff, Defendant, their relatives, partners, friends, and business associates. App. 121 (Brann Dec. ¶ 11). To keep the Plaintiff's identity under wraps, the trial court would be required to allow Plaintiff to try this case using pseudonyms for the parties and all the witnesses, and to close the courtroom to the public and the press during jury selection and the entire trial. We now turn to the question of whether either of these requests is permissible.

## Summary of Argument

This should be a straightforward appeal. Plaintiff did not unearth a single final ruling in any state or federal court anywhere in the country in which a court approved the complete closure of a civil trial. Although Plaintiff cobbles together *dicta* and snippets from out-of-circuit cases to suggest that partial or limited closures may be appropriate in certain circumstances, none of those cases concerned alleged breaches of a nondisclosure agreement, and Plaintiff did not attempt to satisfy the strict conditions of such partial or limited closures. Moreover, such partial or

limited closures would be patently ineffective—Plaintiff can only maintain his anonymity if the entire trial, consisting of testimony from the parties and the people who know them or work for them, testifying about Plaintiff and Defendant, is hermetically sealed from the public and press.

Although Plaintiff argues that the district court abused its discretion in finding he did not present sufficiently important countervailing interests that trumped the usual presumption of open judicial records under *United States v. Kravetz,* 706 F.3d 47 (1st Cir. 2013), Plaintiff did not then address the follow-up question, namely, whether the First Amendment protects the right of the public and press to attend a civil trial, and thus Plaintiff must clear a much higher bar to close the trial. If this Court need reach that issue, it should join every other Circuit that has decided this issue and conclude there is such a right. Plaintiff's reply brief would be too late to address this constitutional argument, and also attempt to show, for the first time, how Plaintiff's request to close the entire trial satisfies strict scrutiny.

The district court also did not abuse its discretion by finding Plaintiff failed to satisfy the test under *Doe v. MIT*, 46 F.4th 61 (1st Cir. 2022), for

parties and witnesses to use pseudonyms at trial as an exception to the strong presumption against such use. Once again, because the evidence in this case about Plaintiff and Defendant will come from their relatives, partners, friends, and associates, Plaintiff's goal of anonymity can only be achieved if everyone at trial appears anonymously. But Plaintiff did not point to a single case in any state or federal court anywhere in the country in which a court allowed all parties and witnesses to use fake names at trial.

If Plaintiff instead seeks only to have Plaintiff and Defendant continue to use pseudonyms at trial, that is still inappropriate because the district court justifiably concluded that he did not satisfy any of the paradigms of *MIT*. Besides, such a half-solution would be an inadequate band-aid.

## Argument

### I. The Parties Agree that the Trial Court's Rulings Should Be Evaluated under the Abuse of Discretion Standard.

Defendant agrees with Plaintiff that the trial court's order denying Plaintiff's motion to close the trial and to allow the parties to use pseudonyms at trial should be evaluated under an abuse of discretion standard, and also agrees that Plaintiff correctly stated that standard:

This Court should review the District Court's Order allowing media and public access to the trial and disallowing the continued use of pseudonyms through trial under an abuse of discretion standard. *MIT*, 46 F.4th at 66 (citing *Does 1-3 v. Mills*, 39 F.4th 20, 24 (1st Cir. 2022)). Abuse of discretion "occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." *Fashion House, Inc. v. Kmart Corp.*, 892 F.2d 1076, 1081 (1st Cir. 1989) (quotation omitted). "This standard is not monolithic: within it, embedded findings of fact are reviewed for clear error, questions of law are reviewed de novo, and judgment calls are subjected to classic abuse-of-discretion review." *Bricklayers and Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82, 91 (1st Cir. 2014) (quotation omitted). On abuse-of-discretion review, the Court will reverse a trial court's decision if it determines that the judge committed a "material error of law" or a "meaningful error in judgment." *Lawes v. CSA Architects and Engineers LLP*, 963 F.3d 72, 90 (1st Cir. 2020) (citation omitted).

Appellant's Brief 16. The parties part company, however, on the law concerning the substance of Plaintiff's arguments, and whether the trial court abused its discretion in denying Plaintiff's requests.

## II. The Trial Court Did Not Abuse its Discretion in Denying Plaintiff's Unprecedented Request to Close the Entire Trial Concerning an Alleged Breach of a Nondisclosure Agreement.

The trial court denied Plaintiff's request to close any trial in this matter under the common law of the right of public access to judicial records

articulated in *United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013), and thus did not reach the constitutional issue whether there was a First Amendment right of access to civil trials that would then require Plaintiff to satisfy strict scrutiny to close the trial. Add. 20. Plaintiff attacks the trial court's conclusion concerning the common law, but does not address the constitutional issue. *See* Appellant's Brief 17–31. Both the common law and the First Amendment support the conclusion that any civil trial in this matter should be open to the public and press.

## A. The Denial of the Motion to Close the Trial is Supported by the Common Law Right of Public Access.

In determining whether the trial court could close the trial to the public and press, we begin with the indisputable, namely, that federal civil trials are presumptively open as a matter of federal civil procedure. Under Fed. R. Civ. P. 43(a), "[a]t trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise." Under Fed. R. Civ. P. 77(b), "[e]very trial on the merits must be conducted in open court and, so far as convenient, in a regular courtroom." Closing the courtroom, therefore,

will require suspending these rules, which "govern the procedure in all civil actions and proceedings in the United States district courts" under Fed. R. Civ. P. 1. Plaintiff does not mention, much less challenge, the district court's conclusion that civil trials are presumptively open under the Federal Rules of Civil Procedure. Add. 25–26.

Although Plaintiff naturally focuses on the exceptions, he does not appear to question—nor could he—that "[a]s the First Circuit explained in [*United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013)], there are some limitations at the edges of some unusual cases, but the presumptive rule is public access" to civil trials. Add. 24 (brackets added).

Plaintiff takes umbrage at the district court's observations that "Doe's request for closure of a civil trial is a 'nonstarter' on the grounds that '[a] publicly filed court case is no longer a private matter' and that '[i]n bringing this case, Mr. Doe turned to a forum established by the United States Constitution, funded by American taxpayers, comprising a branch of the federal government, whose procedures *must be open* and whose rulings *must be a matter of public record.*'" Appellant's Brief 20 (quoting Add. 24–25)

(emphasis added by Plaintiff). Plaintiff disregards the district court's extensive citations from the Supreme Court and elsewhere supporting this conclusion. *See, e.g.*, Add. 25.

Plaintiff's rejoinder to this authority is to focus instead on an alleged constitutional "right to contract about one's own affairs." Appellant's Brief 21 (quoting *Adkins v. Children's Hosp. of the District of Columbia*, 261 U.S. 525, 545 (1923)). Not only is *Adkins* a product of the discredited *Lochner* era, *see Lochner v. New York*, 198 U.S. 45 (1905), but Plaintiff neglected to mention that *Adkins* was expressly overruled in *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 400 (1937).

Although "[t]he NDA further provides Doe with the right to sue, entitling him to temporary injunctive relief and other legal and equitable remedies in the event of Smith's breach[,]" and thus he has "contractual privacy rights," Appellant's Brief 21, that does not give him contractual rights with the *United States* to force the district court to close the courts at his request. If Plaintiff wanted a contractual right to private proceedings to

enforce his "contractual privacy rights," there is a forum for that—it is called arbitration.

> Voluntary arbitrations are private proceedings. As such, they are generally closed to the public. Therefore, the parties are free to agree that their arbitration proceedings will be held in confidence. Once the parties resort to the courts, however, their confidentiality agreement does not, and cannot, authorize the sealing of a presumptively public federal court record. *The parties are privileged to arbitrate in secret, but they must litigate in public*.

*Martis v. Dish Network*, 2013 WL 6002208, *2 (W.D. Mich. Nov. 12, 2013) (emphasis added). Because Plaintiff required Defendant to sign the NDA drafted by Plaintiff's counsel that provided for court enforcement instead of arbitration, to paraphrase the Bard, the fault is not in the stars (or the courts), but in ourselves.

Plaintiff then argues that "[t]he District Court also failed to consider relevant case law that, consistent with *Kravetz*, recognizes the propriety of excluding the media and public from a civil trial to protect competing contractual and privacy interests." Appellant's Brief 21–22. This charge cannot withstand even casual scrutiny: Plaintiff does not cite a single case that upheld the closure of an entire trial; Plaintiff does not cite a single case

that concerned a breach of a nondisclosure agreement; and Plaintiff does not cite a single case from this Circuit. *See id*. 22–23. The cited cases are very thin reeds for the extraordinary proposition advanced by Plaintiff:

- In *Standard & Poor's Corp. v. Commodities Exch., Inc*., 541 F. Supp. 1273, 1274 (S.D.N.Y. 1982), over 40 years ago the court closed the courtroom for only 40–50 minutes while one witness testified about certain trade secrets.

- In *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059 (3d Cir. 1984), not cited by Plaintiff below, over 40 years ago the court found that there was a First Amendment right to a public trial (not addressed by Plaintiff), found that the trial court abused its discretion by sealing certain trial records relating to nonpublic corporate financial information (not acknowledged by Plaintiff), and established strict procedures concerning the sealing of transcripts (not addressed by Plaintiff).

- In *Ospina v. Trans World Airlines, Inc.*, 975 F.2d 35 (2d Cir. 1992), not cited by Plaintiff below, over 30 years ago in a case that

concerned the Warsaw Convention, the court mentioned in passing that the courtroom was closed when anti-terrorist measures were discussed and there was no indication anyone objected to the closure. *Id.* at 36.

- In *In re T.R.*, 556 N.E.2d 439 (Ohio 1990), not cited by Plaintiff below, over 30 years ago the Ohio Supreme Court concluded that juvenile proceedings were traditionally treated differently than civil trials and thus the juvenile court could partially close such proceedings relating to child abuse, neglect, dependency, or custody under certain circumstances. *Id.* at 448–49.

This is the sum total of the authority that the district judge "failed to consider." Appellant's Brief 21. Stated differently, Plaintiff does not cite *any* authority supporting the extraordinary result he seeks in this appeal.

"Though the public's right of access is vibrant, it is not unfettered. Important countervailing interests can, in given instances, overwhelm the usual presumption and defeat access." Add. 21 (cleaned up and quoting *Kravetz*, 706 F.3d at 59 (other citations omitted)). "In other words, while the

presumption is broad, exceptional circumstances may counter it. However, the First Circuit cautioned 'only the most compelling reasons can justify non-disclosure of judicial records' that come within the scope of the common-law right of access.'" *Id*. (quoting *Kravetz*, 706 F.3d at 59 (other citations omitted)).

In contrast to the cases cited by Plaintiff in which the countervailing interests justifying a partial or temporary closure were trade secrets, nonpublic corporate financial information, anti-terrorist measures, and child abuse, *see* Appellant's Brief 22–23, here Plaintiff seeks to close the courtroom to keep anyone from knowing that he won the lottery. The district court properly could, and did, find that this was not a "compelling reason" to close an entire trial.

Plaintiff argues that it is "common knowledge" that people are "obsessed with the lottery and those who win it," and that such lottery wins can have deleterious effects on lottery winners, relying on arguments and articles not presented to the district court. *See id*. 23–24. More importantly, the district court considered and rejected Plaintiff's overarching theme that his interest in anonymity should control here: "the plain fact is that courts

often deal with information that people would prefer to keep out of the public eye, and, if the wishes of litigants for privacy trumped the right of public access, courts would become publicly funded forums for private litigation, unaccountable to the public itself." Add. 27.

The trial court then considered Plaintiff's asserted privacy interests and concluded that "the Court is not at all as certain as the Plaintiff that the family matters at the center of this case are traditionally so private that judicial decisions are not public." *Id.*; *see also* Add. 27–28 (collecting authorities). Plaintiff does not grapple with this analysis, much less show it is clearly erroneous. All that is left here is Plaintiff's desire to keep his billion-dollar lottery win secret, which pales by comparison to the long history of public access to federal civil trials in this country.

The district court also rejected Plaintiff's contention that this matter was not newsworthy, cogently explaining why interest in this case was not just "morbid craving." *Compare* Appellant's Brief 20, 26 *with* Add. 23, 29. Indeed, Plaintiff's description of "[o]ver 60 news articles, TV segments, and YouTube videos" (Appellant's Brief 25) unintentionally confirms that this

lawsuit *Plaintiff filed* is newsworthy. *See also id*. ("The media sensationalism surrounding this case *began the day after Doe filed his Complaint*[.]") (brackets and emphasis added). Schadenfreude sells.

Surveying the entire record, the district court concluded that "although the legal issues presented in the core allegation of a violation of the NDA in this case involve the parties' family matters, they are also undeniably matters of public interest." Add. 30. Although Plaintiff may disagree with that assessment, it is not clearly erroneous.

We add a coda to this argument. Plaintiff repeatedly attacks the district judge for an alleged animus towards rich people. *See* Appellant's Brief 11–12, 30–31, 50–51. Although Plaintiff protests that he is not arguing that he is entitled to close the courtroom (or use a pseudonym) just because he is rich, his arguments to the district court suggest otherwise. *See, e.g.*, Add. 32 ("There are unique risks inherent to being an ultra-high-net-worth individual[.]") (quoting Plaintiff's filing). The district judge explained why that Plaintiff's new-found wealth enabled him to ameliorate the alleged adverse consequences of disclosing his identity. Add. 32. It is, at best, tone-

deaf to suggest that the district judge is biased against wealthy people when the judge noted that he took an "oath to 'administer justice without respect to persons, and do equal right to the poor and to the rich,'" and thus he could not accede to "Mr. Doe's demand that his trial be closed to the public because he is rich." Add. 31–32 (cleaning up and quoting 28 U.S.C. § 453). As Johnny Depp, Rudy Giuliani, Britney Spears, and many others have discovered, even rich and famous people are required to try their messy, embarrassing, civil cases in public.

## B. The Denial of the Motion to Close the Trial is Supported by the First Amendment.

If Plaintiff somehow convinced this Court that the district court erred in finding that Plaintiff failed to present compelling reasons that counterbalanced the common law presumption in favor of a trial open to the public and press, that is not the final chapter in the book. On the contrary, this Court then would need to address the further question that the district court found unnecessary to reach, namely, whether there is a First Amendment right for the public and press to attend the trial, and if so,

whether Plaintiff satisfied the higher standard of strict scrutiny to close the courthouse doors.

Plaintiff did not address either question, and a reply brief will be too little, too late. *Cf. Town of Norwood v. FERC*, 202 F.3d 392, 405 (1st Cir. 2000) (failure of appellant to "address obvious critical issues" in main brief "forfeits" argument); *Lawless v. Stewart Health Care Sys., LLC*, 894 F.3d 9, 25 (1st Cir. 2018) ("argument not advanced in appellant's opening brief but raised only in reply brief" is "waived") (citation omitted); *Jones Lang LaSalle Americas, Inc. v. NLRB*, 128 F.4th 1288, 1297 (D.C. Cir. 2025) (to prevent "sandbagging of appellees … issues not raised until the reply brief are forfeited") (cleaned up, ellipsis added, and citations omitted).

Most federal cases involving court closures involve criminal cases, which is not surprising in light of the Sixth Amendment guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and *public* trial[.]" U.S. Const. amend. VI (emphasis added). Because the Sixth Amendment right is personal to the accused, *see Gannett Co. v. DePasquale*,

443 U.S. 368, 379–80 (1979), the right of the public and the press to attend criminal trials must be found elsewhere.

Accordingly, in the context of criminal trials, the Supreme Court held a year after *DePasquale* that the First Amendment guarantees the press and public a right of access to criminal proceedings. *See Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 580–81 (1980) (plurality opinion); *id*. at 585 (Brennan, J., concurring); *id*. at 589 (Stewart, J., concurring); *id.* at 604 (Blackmun, J., concurring); *see also Press-Enterprise Co. v. Superior Court of California, Riverside Cty*., 464 U.S. 501, 516 (1984) (Stevens, J., concurring) (First Amendment requires criminal jury selection to be open to public and press).

Although *Richmond Newspapers* concerned criminal trials, the plurality observed:

> Whether the public has a right to attend trials of civil cases is a question not raised by this case, but we note that *historically both civil and criminal trials have been presumptively open*.

*Richmond Newspapers*, 448 U.S. at 580 n.17 (emphasis added). In short, the Supreme Court has held that the First Amendment protects the right of the

public and the press to attend criminal trials, and has noted that historically both civil and criminal trials have been presumptively open.

Although this Court has not definitively decided whether the public and the press have a First Amendment right to attend a civil trial, *see United States v. Three Juveniles,* 61 F.3d 86, 88 n.2 (1st Cir.1995), *cert. denied,* 517 U.S. 1166 (1996), courts elsewhere routinely have found such a right.

In *Doe v. Santa Fe Indep. School Dist.,* 933 F. Supp. 647 (S.D. Tex. 1996), the court surveyed the existing caselaw, and did not find *any* Circuit that had rejected a First Amendment right to attend a civil trial, although it did note that the First and Ninth Circuits had not yet addressed the issue. *See id.* at 650 n.1. Instead, it found several Circuits had applied the *dicta* in *Richmond Newspapers* to conclude generally that there was a First Amendment right of the public and press to attend a civil trial. *See id.* at 649–50 (citing *Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059 (3d Cir. 1984); *Brown & Williamson Tobacco Corp. v. FTC,* 710 F.2d 1165 (6th Cir. 1983), *cert. denied,* 465 U.S. 1100 (1984); *Westmoreland v. Columbia Broadcasting System, Inc.,* 752 F.2d 16 (2d Cir. 1984),

*cert. denied,* 472 U.S. 1017 (1985); *In re Continental Ill. Secs. Litigation,* 732 F.2d 1302 (7th Cir. 1984)).

In other Circuits, the *Santa Fe* court found that there was a First Amendment right of the public and press to attend a civil trial in certain circumstances. *See Santa Fe*, 933 F. Supp. at 650 n.1 (citing *Webster Groves Sch. Dist. v. Pulitzer Publishing Co.,* 898 F.2d 1371 (8th Cir. 1990); *Newman v. Graddick,* 696 F.2d 796 (11th Cir. 1983)).

Since *Santa Fe* surveyed the law in 1996, "a number of circuits … have addressed the issue" … "whether there is a First Amendment right to attend civil proceedings[.]" *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 695 n.11 (6th Cir. 2002) (ellipses and brackets added). "*All* have agreed the governing test is the two-part *Richmond Newspapers* test and have further agreed that the press and public have a First Amendment right to attend civil proceedings under that test." *Id*. (emphasis added) (collecting cases). Applying this unbroken line of authority, this Court should conclude that the public and press have a First Amendment right to attend any trial in this matter.

If the Court concludes that there is a First Amendment right of the public and press to attend a civil trial, it is universally recognized that any attempt to close the trial must satisfy strict scrutiny. Indeed, Plaintiff conceded the point in briefing this motion below. ECF 179 (Plaintiff Brief 3).

We urge the Court to apply the high standards articulated in *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059 (3d Cir. 1984), to determine if procedurally and substantively Plaintiff has overcome the presumption in favor of an open trial under the First Amerndment. *Cf. Nat'l Org. for Women v. McKee*, 2010 WL 3364448, *2–3 (D. Me. Aug. 24, 2010) (Rec. Dec.) (applying *Publicker* on motion to unseal). Because Plaintiff cited *Publicker* as "relevant case law" that the district court should have considered, *see* Appellant's Brief 21–22, Plaintiff presumably concurs in this assessment.

"[T]o limit the public's access to civil trials there must be a showing that the denial serves an important governmental interest and that there is no less restrictive way to serve that governmental interest." *Publicker*, 733 F.2d at 1070 (citing *Globe Newspaper Co. v. Superior Court for the County of Norfolk*, 457 U.S. 596, 606–607 (1982)) (other citation omitted). "The party

seeking the closure of a hearing … bears the burden of showing that the material is the kind of information that courts will protect and that there is good cause for the order to issue." *Publicker*, 733 F.2d at 1070–71 (ellipsis added and citation omitted). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Id*. at 1071 (citation omitted).

"Procedurally, a trial court in closing a proceeding must both articulate the countervailing interest it seeks to protect and make 'findings specific enough that a reviewing court can determine whether the closure order was properly entered.'" *Id*. (quoting *Press-Enterprise*, 464 U.S. at 510). "Substantively, the record before the trial court must demonstrate 'an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Publicker*, 733 F.2d at 1071 (quoting *Press-Enterprise*, 464 U.S. at 510).

Because Plaintiff bears the burden of proof in this regard, and because he did not attempt to shoulder his burden, much less submit actual evidence

or satisfy the strict scrutiny standard articulated in *Publicker* to close the courtroom even partially or temporarily, including showing that there was no restrictive alternative, that should be the end of matter. Given that only a complete closure of jury selection and the entire trial will achieve Plaintiff's goal of maintaining his anonymity—a result that *no* court has ever endorsed in the face of the First Amendment—the district court did not abuse its discretion in denying this request.

## III.   The Trial Court Did Not Abuse its Discretion in Denying Plaintiff's Unprecedented Request to Allow the Adult Parties and All Witnesses to Use Pseudonyms at Trial.

Plaintiff asks this Court to "vacate the District Court's Order denying Doe's Motion for continued pseudonymity." Appellant's Brief 51. Defendant opposes this request because Plaintiff cannot overcome the "strong presumption against the use of pseudonyms in civil litigation." *MIT*, 46 F.4th at 67 (citation omitted).

As a threshold matter, it is by no means transparent what Plaintiff is seeking. Plaintiff's original motion only sought permission to identify the two adult parties, Plaintiff and Defendant, using pseudonyms. *See* Add. 51.

In the briefing on this issue below, even though his argument and authority concerned the parties, Plaintiff had one throwaway line that said their daughter and "family members" should also be permitted to use pseudonyms at trial. *See* ECF 179 (Plaintiff's Brief 8). The district court's ruling foreclosed this possible attempt to slip the camel's nose under the tent:

> While the parties may, in the run-up to trial, move for minor children to proceed under pseudonym, this is a separate matter not currently before the Court, and the Court now declines to grant the Plaintiff's request for the blanket use of pseudonyms by all parties and all witnesses.

Add. 38.

The significance of Plaintiff's strategic ambiguity is self-evident. Because the evidence in any trial likely will consist entirely of testimony from the parties, their relatives, partners, friends, and business associates, *see* App. 120–21 (Brann Dec. ¶¶ 5–11), if Plaintiff's request to use pseudonyms *does not include all witnesses*, it should be obvious that allowing only the parties to use pseudonyms will be wholly ineffective. For example, when Plaintiff's father takes the stand to eviscerate Plaintiff's central allegations in the case, and answers the first question—"Could you state

your name and address for the record?"—that will mark the end of Plaintiff's attempt to keep his $1.3 billion lottery win secret.

If, on the other hand, Plaintiff's request to use pseudonyms *does include all witnesses*, then his failure to identify any case anywhere in the country where all parties and witnesses were granted permission to use pseudonyms is fatal to his argument on appeal. That is particularly true here when his arguments and authorities focus almost exclusively on claimed harms to parties generally and to himself specifically as a *nouveau riche* lottery winner. Whether Plaintiff's request is unworkable or untenable is unimportant— Plaintiff's request to allow only the parties *or* the parties and all witnesses to use pseudonyms at trial to protect the secrecy of Plaintiff's multibillion-dollar lottery win was properly denied for failing to overcome the strong presumption against the use of pseudonyms in civil litigation.

On the merits, the district court followed the well-blazed path set forth by this Court in *Doe v. MIT*, 46 F.4th 61 (1st Cir. 2022), and *Does 1-3 v. Mills*, 39 F.4th 20 (1st Cir. 2022). Add. 33. Plaintiff concedes, as he must, that the district court "enjoys broad discretion to quantify the need for anonymity in

the case before it." Appellant's Brief 32 (quoting *MIT*, 46 F.4th at 72). "This broad discretion extends to the court's ultimate determination as to whether that need outweighs the public's transparency interest." *MIT*, 46 F.4th at 72. "Under this deferential standard, we reverse the district court only if it plainly appears that the court below committed a meaningful error of judgment." *Doe v. Lisbon*, 78 F.4th 38, 48 (1st Cir. 2023) (citations omitted) (quoted in part in Appellant's Brief 32).

Plaintiff also concedes, as he must, that "[i]n *MIT*, this Court recognized that, although there is a strong presumption against the use of pseudonyms in civil litigation, their use is warranted in exceptional cases." Appellant's Brief 32 (citing *MIT*, 46 F.4th at 70; *Mills*, 39 F.4th at 25). This is not the exceptional case.

Furthermore, the district court took to heart this Court's admonition that "[d]istrict courts must be mindful that the balance between a party's need for anonymity and the interests weighing in favor of open judicial proceedings may change as the litigation progresses." *MIT*, 46 F.4th at 73. In a case cited with approval by this Court, a district court explained in detail

why it may be improper to use pseudonyms at trial even if it was appropriate during pretrial proceedings. *Id*. (citing *Lawson v. Rubin,* 2019 WL 5291205, \*2–3 (E.D.N.Y. Oct. 18, 2019)). Those considerations are even more compelling here when Plaintiff apparently seeks to have every witness use a pseudonym at trial.

Plaintiff takes the district court to task for failing to take into consideration "all relevant circumstances" in assessing whether the totality of the circumstances warranted the use of pseudonyms at trial. Appellant's Brief 34. Plaintiff, however, did not raise in his brief below most of these "relevant circumstances" that the district court "failed" to consider. *Compare* ECF 179 (Plaintiff's Brief 7–8) *with* Appellant's Brief 34, 35–36 (Defendant would suffer no prejudice); *id*. at 34, 36–37 (the parties consistently used pseudonyms so far); *id*. at 34, 37–38 (the actual identities are immaterial); *id*. at 34, 38–39 (no circumstances have changed). Because judges are not mind readers, Plaintiff cannot rely on these new arguments on appeal to overturn the decision below. *See also Foss v. Eastern States Exposition*, 2025 WL 2417033, \*5 (1st Cir. Aug. 21, 2025) ("It is black-letter law that arguments not

presented to the trial court are, with rare exceptions, forfeit on appeal.")
(quoting *In re Redondo Constr. Corp.*, 678 F.3d 115, 121 (1st Cir. 2012)).

Plaintiff argues that his "case fits solidly within the first paradigm"
articulated in *MIT* to allow the use of pseudonyms. Appellant's Brief 40.
"The first *MIT* paradigm involves a litigant who 'reasonably fears that
coming out of the shadows will cause him unusually severe harm (either
physical or psychological).'" *Id*. (quoting *MIT*, 46 F.4th at 71). As one of the
cases cited by Plaintiff explained, "[p]aradigmatic examples [of the first
paradigm] include litigants who are survivors of sexual assault and litigants
undergoing treatment for mental illness that might be jeopardized by
disclosure." *Doe v. Del Toro*, 2024 WL 816511, *2 (D. Mass. Feb. 27, 2024)
(brackets added and citations omitted). Indeed, all of the cases cited by
Plaintiff concern litigants vulnerable to sexual, physical, mental, or other
actual trauma if their identities are revealed, as opposed to the slings and
arrows of outrageous fortune. *See* Appellant's Brief 41.

As the district court explained, Plaintiff's argument sweeps too
broadly:

It would extend beyond lottery winners to heirs to large fortunes, top tier professional athletes, highly successful entrepreneurs, nationally prominent entertainers, including actors and musicians, celebrities of all ilks, including those newly famous on social media; the list goes on and the risks can include members of their families.

Add. 35. And, unlike litigants who feel unsafe or vulnerable and thus need protection under the first paradigm, "for many of these individuals, great wealth comes with the financial capacity to afford enhanced security and privacy." Add. 36. Plaintiff has nothing in common with, say, a sexual assault survivor, which may explain why none of his cited cases remotely resemble this case.

Plaintiff argues that his "case fits solidly within the second paradigm" articulated in *MIT* to allow the use of pseudonyms. Appellant's Brief 41. "The second *MIT* paradigm involves cases where identifying Doe would harm innocent non-parties, as they have a 'stronger case for anonymity' than even the parties." *Id.* (quoting *MIT,* 46 F.4th at 71).

Plaintiff relies on his daughter to satisfy the second paradigm, but that is a red herring. Neither party lists the daughter as a potential witness at trial. *See* App. 120–21 (Brann Dec. ¶¶ 5, 9). As quoted above, the district court

is prepared to allow minors to use pseudonyms at trial. Add. 38. The court also found that Plaintiff "provided no evidence for the Court to conclude that if his name were revealed, her privacy would be in jeopardy[,]" Add. 37, which Plaintiff does not challenge on appeal as clearly erroneous. As before, Plaintiff's resources allow him to afford enhanced security and privacy for his daughter if any of his unsupported fears come to pass.

Finally, in this regard, it is difficult to take seriously Plaintiff's professed concerns given that the unredacted portion of the NDA *Plaintiff* filed in court includes his daughter's actual birthdate, and *Defendant* had to file an emergency motion to keep sealed Plaintiff's proposed amended complaint and exhibits that identified his daughter by name 31 times. *See* Add. 45 (NDA ¶ 9); ECF 141 (Defendant's Brief 2). Plaintiff's request to use pseudonyms is all about protecting Plaintiff.

Plaintiff argues that his "case fits solidly within the third paradigm" articulated in *MIT* to allow the use of pseudonyms. Appellant's Brief 43. "The third paradigm 'involves cases in which anonymity is necessary to

forestall a chilling effect on future litigants who may be similarly situated.'"

*Id*. (quoting *MIT,* 46 F.4th at 71).

Plaintiff has seized on the district court's observation that "Mr. Doe faces a classic Catch-22: a lawsuit to enforce his NDA, which prohibits the disclosure of private information, and an upcoming trial at which the private information could be publicly disclosed." Add. 36 (footnote omitted). Plaintiff ignores, however, the district court's *coup de grâce*: "But Mr. Doe's dilemma is one of his own making." *Id*. By requiring Defendant to sign an NDA that provided for court enforcement instead of confidential arbitration, *Plaintiff* planted the seeds of his own downfall. *See* Add. 36–37. The only chilling effect on future lottery winners is that they will not use the NDA drafted by Plaintiff's counsel.

* * *

Coming full circle, to maintain his invisibility cloak, Plaintiff must not only be able to try this case using a pseudonym and close the courtroom when he testifies, but because the testimony comes exclusively from and involves Plaintiff, Defendant, their relatives, partners, friends, and business

associates, Plaintiff also must prevent the disclosure of the identity of *all* of the parties and *all* the witnesses in the trial and close the courtroom for *all* of jury selection and *all* of the trial. That is a bridge too far.

## Conclusion

Defendant-Appellee Sara Smith respectfully requests that the Court affirm the order entered below denying the motion of Plaintiff-Appellant John Doe to close the courtroom if there is a trial and to allow the parties and witnesses to use pseudonyms at trial.

Dated: September 3, 2025

Respectfully submitted,

/s/Peter J. Brann
Peter J. Brann, Bar #45139
Hanna L. Wurgaft, Bar #1212807
Brann & Isaacson
113 Lisbon St., P.O. Box 3070
Lewiston, ME  04243-3070
207.786.3566
pbrann@brannlaw.com
hwurgaft@brannlaw.com

*Attorneys for Defendant-Appellee*

# Certificate of Compliance

I certify that this brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) because it contains 7011 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word, 14-point, Palatino Linotype font.

Dated: September 3, 2025                    /s/Peter J. Brann
                                            Peter J. Brann

**Certificate of Service**

I certify that on September 3, 2025, I electronically filed this document

using the CM/ECF system, which will send notification to counsel of record.

<u>/s/Peter J. Brann</u>
Peter J. Brann